THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Rodney Delaboin (60217-060), | ) |
| Plaintiff, | ) |
| v. | ) Case No. 21 C 50079 |
| | ) Hon. Iain D. Johnston |
| United States of America, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Rodney Delaboin, formerly an inmate at USP Thomson, brought this Federal Tort Claims Act suit, 28 U.S.C. § 1346(b)(1), alleging that he was assaulted by staff and denied adequate living conditions, including food water, and medical care, while in restraints from Oct. 2, 2019, to Oct. 6, 2019. Defendant moved for summary judgment, arguing (1) the medical negligence claim must be dismissed because of Plaintiff's non-compliance with the Illinois Healing Art Malpractice Act, 735 ILCS 5/2-622; and (2) summary judgment should be granted as to the remaining claims because Plaintiff at most suffered *de minimis* injuries in the form of minor abrasions, which are insufficient to maintain an FTCA action under 28 U.S.C. § 1346(b)(2). The first part of the motion is denied as moot, as the medical malpractice claim was dismissed at Plaintiff's request. (*See* Dkt. No. 124). The remainder of the motion is granted in part and denied in part. Plaintiff's negligence claim related to his living conditions is dismissed. Plaintiff may proceed with his assault and battery claims; however, because his injuries are *de minimis*, he may not recover for mental or emotional injuries. Plaintiff's second response to the summary judgment motion (Dkt. No. 130) is stricken, as it was filed without leave and in any event does not address the relevant issues.

## BACKGROUND

I.     **Northern District of Illinois Local Rule 56.1**

Local Rule 56.1 governs the procedures for filing and responding to motions for summary judgment in this court. The rule is intended "to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (internal citation omitted.) Local Rule 56.1(a) requires the moving party to provide a statement of material facts that complies with Local Rule 56.1(d). LR 56.1(a)(2). Local Rule 56.1(d) requires that "[e]ach asserted fact must be supported by citation to the specific evidentiary material, including the specific page number, that supports it. The court may disregard any asserted fact that is not supported with such a citation." LR 56.1(d)(2).

The opposing party must then respond to the movant's proposed statements of fact. *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005); LR 56.1(e). In the case of any disagreement, "a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact. Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." LR 56.1(e)(3). "[M]ere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material." *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003).

Because Plaintiff is proceeding *pro se*, Defendants served him with a "Notice to *Pro Se* Litigant Opposing Motion for Summary Judgment" as required by Local Rule 56.2. (Dkt. No. 116.) Plaintiff responded by filing a Memorandum of Law opposing the motion (Dkt. No. 125 at pgs. 1-14), a partial response to Defendant's Statement of Facts (*see id.* at pgs. 16-20), and

exhibits (Dkt. No. 126). Plaintiff addresses only some of Defendant's factual statements, and his responses often are non-responsive, argumentative, or consist of unsupported contentions of wrongdoing, collusion, or falsification of records by prison officials. The Court will consider only those responses that are supported by the record or about which Plaintiff could properly testify. *See James v. Hale*, 959 F.3d 307, 315 (7th Cir. 2020) (citing Fed. R. Civ. P. 56(c)(4)); *Sistrunk v. Khan*, 931 F. Supp. 2d 849, 854 (N.D. Ill. 2013); Fed. R. Evid. 602. The Court will not look beyond the cited material, however. *See Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 898 (7th Cir. 2003) ("[D]istrict courts . . . are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them."). Where Plaintiff has not properly responded to a certain fact or has admitted it, the Court will accept it as true to the extent supported by the record. *Lamz*, 321 F.3d at 683 (7th Cir. 2003).

The Court is mindful that failure to strictly comply with Local Rule 56.1, or indeed to respond at all to a motion for summary judgment, does not automatically warrant judgment in favor of the moving party. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006) (moving party has "ultimate burden of persuasion" to show entitlement to judgment as a matter of law). The Court will apply these standards in evaluating the evidence.

I. **Relevant Facts**[1]

Plaintiff Rodney Delaboin, who was formerly housed at USP Thomson, brought this Federal Tort Claims Act lawsuit alleging that he was assaulted by staff and denied adequate living conditions, including food, water, and medical care, while in restraints in October 2019. (Def.'s Statement of Facts ("SOF"), Dkt. No. 115, at ¶ 1.) Plaintiff is serving a 113-month sentence in federal custody for a firearms conviction. (*Id.* at ¶ 2.) Plaintiff has a "pretty

---

[1] Subject-matter jurisdiction is proper under 28 U.S.C. § 1346(b)(1), and venue is proper under 28 U.S.C. § 1402(b).

3

extensive disciplinary history," including for assault, engaging in sexual acts, making sexual proposals or threats, and indecent exposure. (*Id.* at ¶ 3.) Because of his prison disciplinary history, Delaboin was placed in the Bureau of Prison's Special Management Unit (SMU) program twice, once at USP Lewisburg, and once at USP Thomson.[2] (*Id.* at ¶ 4.)

The SMU program is a form of restrictive housing where enhanced management is necessary to ensure the safety, security, or orderly operation of Bureau of Prisons ("BOP"). (*Id.* at ¶ 5.) Plaintiff was transferred to USP Thomson in July 2019. (*Id.* at ¶ 6.)

Correctional Officer Emma Gamble alleges that Plaintiff sexually assaulted her by ejaculating on her through the food slot in his cell on Oct. 2, 2019, at about 5:10 p.m. (*Id.* at ¶ 7.) Plaintiff denies doing so. (*Id.*; *see* Pl.'s Resp. to Def.'s SOF, Dkt. No. 125, pg. 17, ¶ 7.) BOP policy provides that in the event of an alleged sexual assault, the individuals involved must undergo a medical assessment. (*Id.* at ¶ 8.)

Due to this policy, a lieutenant instructed two officers to escort Plaintiff to a medical office in the Echo Unit rotunda for a medical assessment. (*Id.* at ¶ 9.)[3] The officers escorting Plaintiff alleged that Plaintiff "propelled his upper torso" into them once they were in the rotunda, and that Plaintiff struck another officer who came to assist. (*Id.* at ¶ 10.) Plaintiff denies these allegations and asserts that the officers assaulted him in the rotunda. (*Id.*; *see* Pl.'s Resp. to Def.'s SOF, Dkt. No. 125, pg. 18, at ¶ 11.) Plaintiff was then escorted to a cell where four-point restraints were applied. (*Id.* at ¶ 11.)

Nurse Anthony Simcox performed a videotaped medical assessment of Plaintiff while he

---

[2] Plaintiff contends that he was denied the right to complete this program "due to retaliation and [a] campaign of harassment," (*see* Pl.'s Resp. to Defs.' SOF, Dkt. No. 125, pg. 16, ¶ 5.) That is outside the scope of this lawsuit.
[3] This statement accurately reflects Plaintiff's deposition testimony, *see* Dkt. No. 115-1 at 48:22-49:7, so the Court will not consider Plaintiff's responsive statement, Dkt. No 125, pg. 17, at ¶ 9, in which he contends that Lt. Erskine actually directed officers to lead him to an "ambush site." *See Abraham v. Washington Grp. Int'l, Inc.*, 766 F.3d 735, 741 (7th Cir. 2014) ("[A] deponent may not use an affidavit sworn to after a deposition to contradict deposition testimony without giving a credible explanation for the discrepancies.").

4

was in four-point restraints on Oct. 2, 2019, at approximately 6:30 p.m., to determine whether Plaintiff sustained any injuries as a result of the use of force. (*Id.* at ¶ 12.) Plaintiff complained of tenderness on the right side of his face and a dislocated right elbow. (*Id.* at ¶ 13.) Nurse Simcox did not observe any injuries. (*Id.* at ¶ 14.) Plaintiff contends that his head was swollen to twice its size and that Nurse Simcox failed to record his injuries. (S*ee* Pl.'s Resp. to Def.'s SOF, Dkt. No. 125, pg. 18, at ¶ 12.)

Plaintiff testified that he was in four-point restraints from about 5:45 p.m. on Oct. 2, 2019 to about 11 a.m. on Oct. 6, 2019, when he was downgraded to ambulatory restraints. (Def.'s SOF, Dkt. No. 115, at ¶ 15.) Plaintiff was released from restraints at about 1 p.m. on Oct. 6, 2019. (*Id.*)

Prison officials are authorized to apply physical restraints to an inmate to gain control if the inmate appears to be dangerous because the inmate assaults another individual, becomes violent, or displays signs of imminent violence. (*Id.* at ¶ 16.) When an inmate is placed in four-point restraints, staff are to look for a pattern of non-disruptive behavior over time as an indication that the inmate is no longer a disruptive threat. (*Id.*) Based on staff assessment, the prisoner may either be removed from restraints, remain in them, or be placed in progressively more or less restrictive restraints. (*Id.*)

Restraint checks are performed, with correctional staff observing the inmate every 15 minutes from outside the cell and making notes in a log regarding the inmate's behavior. (*Id.* at ¶ 17.) Lieutenants assess the inmate inside the cell every two hours to evaluate the inmate's behavior and log their observations.[4] (*Id.*) Psychology staff assess the inmate every 24 hours, and medical staff assess the inmate inside the cell twice every eight-hour shift. (*Id.*) These

---

[4] Plaintiff contends that correctional officers battered him several times during these two-hour restraint checks during the period in which he was restrained. (*See* Pl.'s Dep., Dkt. No. 115-1, at 148:11-153:13.)

5

assessments were performed on Plaintiff while he was in restraints. (*Id.* at ¶ 18.)

Plaintiff alleges that he sustained the following injuries as a result of being assaulted by correctional officials while in restraints: a cut on his finger from being stomped on (healed), wounded shins from being hit with a baton (leaving scars but otherwise healed), and a cut on his wrist from the restraints (healed). (*Id.* at ¶ 19.)

Medical staff evaluated Plaintiff more than 20 times while he was in restraints. (*Id.* at ¶ 20.) Only one injury was noted during those evaluations, a cut on Plaintiff's finger that Nurse Simcox documented on Oct. 2, 2019, at 9:30 p.m. (*Id.* at ¶¶ 21-22.) Nurse Simcox observed a very small amount of dried blood on Plaintiff's left middle index finger, apparently from a minor skin tear that did not require treatment. (*Id.* at ¶ 22.)

Plaintiff attributes the lack of recorded injuries, without citation to any evidence, to the medical staff being in collusion "with the rogue gang of staff named in this complaint." (*See* Pl.'s Resp. to Def.'s SOF, Dkt. No. 125, at pg. 19, ¶ 20.) He further contends that on Oct. 5, 2019, he complained to Chief Psychologist Tiffany Kacmarcik-Ramirez that he was "in serious pain from the [three] days of torture." (*See* Pl.'s Resp. to Def.'s SOF, Dkt. No. 125, pg. 19, at ¶ 23.) Plaintiff points to a medical record from that evaluation in which Kacmarcik-Ramirez stated that Plaintiff told her he wanted to be placed back on pain medication for a prior knee surgery and indicated that his left knee was injured. (*See* Dkt. No. 126 at pg. 21.) Plaintiff contends that although the medical record refers to his left knee and a prior surgery, he actually was referring to a wound under his right knee, and that Nurse Bergmann refused to provide treatment for the injury. (*See* Pl.'s Resp. to Def.'s SOF, Dkt. No. 125, pg. 19, at ¶ 23.)

Plaintiff submitted a request for a medical assessment after he was released from restraints. (Def.'s SOF, Dkt. No. 115, at ¶ 23.) Nurse Bergmann tried to evaluate Plaintiff on

Oct. 9, 2019, but he refused to see her because he contends that she previously ignored his injuries. (*Id.* at ¶ 24.) Nurse Simcox evaluated Plaintiff on Oct. 21, 2019, in response to Plaintiff's request for an assessment following the Oct. 2, 2019, use of force. (*Id.* at ¶ 25.) Plaintiff pointed out healing abrasions on his left and right legs below the knee and on his left wrist. (*Id.*) Nurse Simcox determined that no treatment was medically necessary, but gave Plaintiff three packets of antibiotic ointment. (*Id.* at ¶ 26.) Plaintiff refused to see Nurse Simcox on Oct. 30, 2019. (*Id.* at ¶ 27.)

Nurse Garcia treated Plaintiff on Nov. 14, 2019. (*Id.* at ¶ 28.) Plaintiff reported that he had been assaulted by staff and had bilateral leg pain since Oct. 2, 2019. (*Id.*) Nurse Garcia reported that Plaintiff had right knee surgery in 2018, and that his gait and range of motion were within normal limits. (*Id.*) Plaintiff told Garcia that he refused to take pills because "I don't know if I'm allergic to any of that." (*Id.*) Nurse Garcia assured Plaintiff that there were no allergies listed in his medical records and suggested that he try using over-the-counter pain relievers from the commissary. (*Id.*) Plaintiff testified that when he requested treatment from Nurse Garcia, he did not know what sort of treatment he was looking for. (*Id.* at ¶ 29.)

Plaintiff saw Nurse Practitioner Teresa Ross on Dec. 3, 2019, complaining of bilateral leg pain. (*Id.* at ¶ 30.) Plaintiff told Ross that he had been "beat and batoned by the police" and had "permanent damage to both of [his] legs" because "they split 'em open beatin' me." (*Id.*) Nurse Practitioner Ross observed a 2.4 cm by 2 cm hyperpigmented subcutaneous nodule with a 0.4 cm by 0.1 cm vertical midline healed abrasion to the left anterior lower leg. (*Id.*) Ross also observed a 2.3 cm by 2 cm hyperpigmented subcutaneous nodule with a 0.3 cm by 0.2 vertical midline healed abrasion to the right anterior lower leg. (*Id.*) She concluded that the abrasions were healing or healed, and that Plaintiff did not require medical treatment. (*Id.* at ¶ 31.)

7

The restraint check logs indicate the following as to Plaintiff's food and water intake while in restraints. Plaintiff was fed lunch on Oct. 3, 2019, and provided water later in day, but spit it on staff. (*Id.* at ¶ 32.) Plaintiff refused dinner on October 3. (*Id.*) The next day, October 4, he refused food and water. (*Id.*) On October 5, the logs indicate that Plaintiff ate lunch and threw a banana peel at staff. (*Id.*) Later that day, he ate dinner, but spit water at staff. (*Id.*) Plaintiff was offered food and water on October 6. (*Id.*)

Plaintiff states that he never refused food and water or threw or spit it at anyone. (*Id.* at ¶ 33; *see* Pl.'s Resp. to Def.'s SOF, Dkt. No. 125, pgs. 18, 20, at ¶¶ 16, 32.) Plaintiff contends that he was offered food and water only once while in restraints. (Def.'s SOF, Dkt. No. 115, at ¶ 33.) The prison medical staff concluded that Plaintiff was medically stable and did not show signs of dehydration throughout the time period that he was in restraints. (*Id.* at ¶ 34.) Although Plaintiff contends he needed stitches for his leg wounds, no medical provider has told Plaintiff that his injuries should have been treated differently. (*Id.* at ¶¶ 35-36.) Plaintiff did not develop an infection. (*Id.* at ¶ 37.)

## DISCUSSION

I. **Summary Judgment Standard**

On summary judgment, the Court must view the record in the light most favorable to the non-moving party and grant the motion if the record shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Gupta v. Melloh*, 19 F.4th 990, 997 (7th Cir. 2021); Fed. R. Civ. P. 56(a). Summary judgment is warranted "against a party who fails to make a showing sufficient to establish the existence of an element that is essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment bears the initial burden of showing the grounds for their motion. *Id.* at 323. Once that party does so, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). Mere "metaphysical doubt" is not enough. *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)). A factual dispute is genuine when a reasonable jury could return a verdict in favor of the non-moving party. *Id.*

The Court must construe all facts in the light most favorable to the nonmoving party and draw all legitimate inferences in favor of that party. *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). "A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." *Id.*

**II.     Analysis**

Defendant acknowledges that there is a genuine dispute of fact as to whether Plaintiff assaulted correctional officers or they assaulted him. Nonetheless, the government argues that summary judgment must be granted as to Plaintiff's remaining claims (identified in the Court's screening order as assault, battery, and inadequate living conditions[5]) because he at most suffered *de minimis* injuries, which Defendant argues is insufficient to maintain an FTCA action.

The FTCA provides a limited waiver of the sovereign immunity of the United States with respect to certain torts committed by federal employees. *See Carter v. United States*, 694 F. App'x. 918, 922 (4th Cir. 2017) (unpublished) (citing *FDIC v. Meyer*, 510 U.S. 471, 475–76

---

[5] Plaintiff's response brief indicates that he also is attempting to pursue a claim for intentional infliction of emotional distress. (*See* Pl.'s Mem. in Resp. to Def.'s Mot. for Summ. J., Dkt. No. 125, at pgs. 3, 4.) The Court denied Plaintiff leave to amend his complaint to add this claim by order of Feb. 8, 2023 (*see* Dkt. No. 124), and he cannot amend his complaint through his summary judgment response. *Grayson v. O'Neill,* 308 F.3d 808, 817 (7th Cir. 2002).

(1994)). Such a claim must be: (1) against the United States; (2) for money damages; (3) for injury or loss of property, or personal injury or death; (4) caused by the negligent or wrongful act or omission of any employee of the federal government; (5) while acting within the scope of his or her employment; (6) under circumstances where the United States, if a private person, would be liable to the claimant under the law of the place where the act or omission occurred. *Meyer*, 510 U.S. at 477 (citing 28 U.S.C. § 1346(b)(1)).

As part of the Prison Litigation Reform Act (PLRA), Congress amended the FTCA through § 1346(b)(2), which precludes prisoners from bringing "a civil action against the United States or an agency, officer, or employee of the Government, for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . ." *Carter*, 694 F. App'x. at 922. The PLRA included a similar provision limiting recovery in inmate prisoner civil rights lawsuits for "mental or emotional injury" absent a "prior showing of physical injury . . . ." 42 U.S.C. § 1997e(e). *See id.*

Defendant argues that even if Plaintiff suffered abrasions to his finger, wrist, and shins as a result of staff assaults, abrasions that healed without medical treatment are insufficient to support a claim under the FTCA. Defendant further argues that the FTCA's physical injury requirement is jurisdictional, citing *Brownback v. King*, --- U.S. ---, 141 S. Ct. 740, 749 (2021) ("[I]n the unique context of the FTCA, all elements of meritorious claim are also jurisdictional.") Because Plaintiff has alleged only *de minimis* injuries, the Court does not have jurisdiction to hear his claims, Defendant argues.

As a preliminary point, the Seventh Circuit generally does not treat exceptions to the FTCA's waiver of immunity as jurisdictional. *See Corpeno-Argueta v. United States*, 341 F. Supp. 3d 856, 861–62 (N.D. Ill. 2018) (citing *Parrott v. United States*, 536 F.3d 629, 634 (7th

10

Cir. 2008) ("The statutory exceptions enumerated in § 2680(a)-(n) to the United States's waiver of sovereign immunity (found in § 1346(b)) limit the breadth of the Government's waiver of sovereign immunity, but they do not accomplish this task by withdrawing subject-matter jurisdiction from the federal courts."). In *Parrott*, the Seventh Circuit held that sovereign immunity means that relief against the United States depends upon a statute, such that "the question is not the competence of the court to render a binding judgment, but the propriety of interpreting a given statute to allow particular relief." 536 F.3d at 634; *see Smithfield Foods, Inc. v. United States*, 69 F. Supp. 3d 915, 926 (E.D. Wis. 2014) (discussing the Seventh Circuit's approach to sovereign immunity as "a defense, not a jurisdictional issue"); *see also Scruggs v. Nielsen*, No. 18 CV 2109, 2019 WL 1382159, at *3 n. 6 (N.D. Ill. Mar. 27, 2019) ("Sovereign immunity is a waivable defense, not a jurisdictional bar.").

Defendant does not cite a case in which the Seventh Circuit has addressed whether the limitation found in § 1346(b)(2) is jurisdictional, and the Court has not found one. It is true that the Supreme Court in *Brownback*, 141 S. Ct. at 749, stated that "all elements of a meritorious claim" are jurisdictional under the FTCA. It cited for that proposition *Meyer*, 510 U.S. at 477, which, as noted above, set forth the six elements that must be alleged to state an actionable claim under the FTCA. At issue in *Brownback* was whether the dismissal of FTCA claims, in part for lack of subject-matter jurisdiction, operated as a decision on the merits for the purpose of the statute's judgment bar. *Id.* at 747–48. The Court held that it did. *Id.* at 748. The *Brownback* Court held that although a plaintiff need not prove the elements of an FTCA claim for a court to have subject-matter jurisdiction over his claim, he must plausibly allege them. *Id.* at 749; *see Bourke v. United States*, 25 F.4th 486, 490 (7th Cir. 2022) (citing *Brownback* for the proposition that the "[t]he Supreme Court deems some aspects of the Tort Claims Act to be jurisdictional.")

11

The *Brownback* Court did not address the interpretation of § 1346(b)(2). This Court is aware that other circuits have treated § 1346(b)(2) as jurisdictional. *See*, *e.g.*, *Carter*, 694 F. App'x. at 923 (treating allegations of physical injury as jurisdictional requirement to support claim for emotional distress); *West v. United States*, 729 F. App'x. 145, 147–48 (3d Cir. 2018) (unpublished) (same). But in the absence of any authority on point from the Seventh Circuit, or any Supreme Court case addressing this precise issue, the Court will not treat § 1346(b)(2) as jurisdictional. The Court will instead apply the Seventh Circuit's general approach to FTCA exceptions and consider this provision in terms of whether Plaintiff has brought forth sufficient evidence to proceed to trial.

Plaintiff's complaint seeks to recover for "physical, emotional and mental injuries" due to allegedly being battered by officers while in four-point restraints and having been denied food and water. (*See* Pl.'s Compl., Dkt. No. 13, at pg. 1.) Plaintiff, to the extent he addresses his injuries in his responsive briefing, contends that the injuries to his legs were not minor, and that his attempts to have them photographed by prison officials were unsuccessful. He also contends that his face was swollen to "twice its size," and that treaters at USP Thomson failed to accurately record his injuries during the restraint checks. As proof of the adverse effect of the alleged beating to his shins, he points to a medical record from Feb. 18, 2021, which states that Plaintiff received an intraarticular injection in his right knee. The record states that Plaintiff had a prior knee surgery and osteoarthritis of his knee. (*See* Dkt. No. 126 at pg. 27.) It does not refer to the Oct. 2-Oct. 6, 2019, incident, or state that this injury was caused or exacerbated by the incident. (*See id.*)

The Fourth Circuit's ruling in *Carter* is instructive as to the interpretation of § 1346(b)(2). In that case, the federal prisoner plaintiff alleged that he fell twice after slipping in

12

standing water that flooded his cell. 694 F. App'x. at 919. The plaintiff contended that the falls aggravated pre-existing injuries to his ankle, back, and neck. *Id.* at 920. He filed an FTCA suit seeking compensatory damages for physical injury and emotional distress due to prison officials' alleged negligence in failing to drain the water, delaying medical attention, and ordering him to walk when injured. *Id.*

The government argued that the alleged falls did not cause any aggravation of the pre-existing injuries. *Id.* It moved to dismiss for lack of jurisdiction, citing § 1346(b)(2) and arguing that the statute required a showing of a physical injury that was more than *de minimis*. *Id.* at 921. The government argument that the plaintiff's medical records showed that his condition was "virtually identical" before and after his falls. *Id.* In granting the motion, the district court found that any injury from the alleged falls was *de minimis* or resulted in a *de minimis* aggravation of the prior injuries. *Id.* at 921–22.

The Fourth Circuit reversed, holding that § 1346(b)(2) "is concerned exclusively with claims of emotional distress; it makes no mention of any jurisdictional limit pertaining to claims for 'physical injury' expressly covered by § 1346(b)(1)." *Id.* at 923. Therefore, the appeals court found it was error to apply the jurisdictional limitation of § 1346(b)(2) to the entirety of the plaintiff's lawsuit, rather than only to the claim for emotional distress. *Id.* The Fourth Circuit observed that the plaintiff's claim for physical injury was not subject to that provision, "but to the standard immunity waiver of § 1346(b)(1)," under which he could proceed so long as the injuries of which he complained were cognizable under the relevant state law, in that case the law of West Virginia. *Id.* Because the government did not argue that the extent of the plaintiff's injuries would preclude recovery under state law, the district court had subject-matter jurisdiction over plaintiff's claims for damages arising from physical injury. *Id; see also West*,

729 F. App'x. at 148 ("The limitations on recovery placed by § 1346(b)(2) and § 1997e(e), however, pertain only to actions for mental or emotional injury, and not to actions for physical injury."); *Murphy v. United States*, 116 F.3d 1489 (10th Cir. 1997) (unpublished) (claims for "potential physical and actual emotional damages" were not actionable under the FTCA); *Askew v. USP Leavenworth*, No. 5:20-cv-03058, 2023 WL 184019, at *9 (D. Kan. Jan. 13, 2023) ("The FTCA waives the Government's sovereign immunity for claims based on physical injuries, even de minimis ones."); *Hamilton v. Keller*, No. 3:19CV314, 2020 WL 4144348, at *2 (S.D. Miss. June 9, 2020), *report and recommendation adopted*, No. 3:19-CV-314, 2020 WL 4143386 (S.D. Miss. July 20, 2020) ("Prisoner suits for purely emotional harm do not fall within the FTCA's limited waiver of sovereign immunity, and the Court lacks subject matter jurisdiction to entertain them.").

Defendant does not argue that Plaintiff's injuries were insufficient to state a claim for battery or assault under Illinois law. Under Illinois law, a civil battery is "the unauthorized touching of another's person." *Boyd v. City of Chicago*, 378 Ill. App. 3d 57, 69, 880 N.E.2d 1033, 1043–44 (Ill. App. Ct. 2007). A battery "must include an intentional act on the part of the defendants and a resulting offensive contact with the plaintiff's person." *McNeil v. Carter*, 318 Ill. App. 3d 939, 944, 742 N.E.2d 1277, 1281 (Ill. App. Ct. 2001); *see also Happel v. Wal-Mart Stores, Inc.*, 316 Ill. App. 3d 621, 630, 737 N.E.2d 650, 657 (Ill. App. Ct. 2000) (same). The Court is not aware of any requirement that the injury suffered be greater than *de minimis*, nor has Defendant pointed to one. *See, e.g.*, *Guitron v. Paul*, 675 F.3d 1044, 1046 (7th Cir. 2012) ("In tort law, any unconsented and offensive touching is a battery. . . . An unwelcome tickle with a feather can lead to an award of damages."); *see also Cohen v. Smith*, 269 Ill. App. 3d 1087, 1091, 648 N.E.2d 329, 332 (Ill. App. Ct. 1995) (battery defendant can be liable for "relatively

trivial" contacts that are "merely offensive and insulting.").

Assault is defined under Illinois law "as an intentional, unlawful offer of corporal injury by force, or force unlawfully directed, under such circumstances as to create a well-founded fear of imminent peril, coupled with the present ability effectuate the attempt if not prevented." *Henderson v. Harthsorn*, No. 08-CV-2086, 2011 WL 11464, at *6 (C.D. Ill. Jan. 4, 2011) (citing *Benitez v. American Standard Circuits, Inc.,* 678 F.Supp.2d 745, 767 (N.D. Ill. 2010)). "A claim for assault must include a reasonable apprehension of an imminent battery." *Benitez*, 678 F. Supp. 2d at 767.

Assault and battery are intentional torts under Illinois law. *Toothman v. Hardee's Food Sys., Inc.*, 304 Ill. App. 3d 521, 527, 710 N.E.2d 880, 885 (Ill. App. Ct. 1999). Nominal damages may be presumed from an intentional tort even if a plaintiff cannot prove actual damages. *Duran v. Leslie Oldsmobile, Inc.*, 229 Ill. App. 3d 1032, 1040, 594 N.E.2d 1355, 1362 (Ill. App. Ct. 1992).

Plaintiff may proceed on his claims for physical injuries due to assault and battery, even if those injuries were *de minimis*. Nonetheless, as set forth above, to recover for mental and emotional injuries, he must bring forth evidence of more than *de minimis* physical injuries. He has not done so.

*De minimis* injuries for the purposes of § 1346(b)(2) are injuries like a sore muscle, backache, abrasion, or bruise, for which people ordinarily do not seek medical care. *Perez v. United States*, 330 F. App'x. 388, 389 (3d Cir. 2009) (unpublished); *see also Martinez v. United States*, No. CV 5:14-0102, 2016 WL 11483866, at *7 (S.D.W. Va. Jan. 19, 2016), *report and recommendation adopted*, No. 5:14-CV-00102, 2016 WL 1029558 (S.D.W. Va. Mar. 15, 2016) (temporary aggravation of arthritic pain was *de minimis* injury); *Toran v. Coakley*, No. CV 5:14-

15

024371, 2017 WL 1227951, at *7 (S.D. W.Va. Mar. 8, 2017), *report and recommendation adopted*, No. 5:14-CV-24371, 2017 WL 1217203 (S.D. W.Va. Mar. 31, 2017) (neck stiffness, back, and wrist pain from minor car accident were *de minimis*); *Tsosie v. Bureau of Prisons*, No. 3:CV-10-2360, 2012 WL 4484935, at *4 (M.D. Pa. Sept. 27, 2012) (temporary bladder and bowel discomfort were *de minimis*); *Calderon v. Foster*, No. 5:05-CV-00696, 2007 WL 1010383, at *8 (S.D.W. Va. Mar. 30, 2007), *aff'd sub nom. Calderon v. Corr. Officer Foster*, 264 F. App'x. 286 (4th Cir. 2008) (physical pain, standing alone, was *de minimis* and chest pain that required minimal medical treatment did not suffice).

As noted above, Plaintiff contends that he suffered a cut on his finger that healed, wounded shins from being hit with a baton that left scars but otherwise healed, and a healed cut on his wrist from the restraints.

Assuming, as the Court must do at this stage, that Plaintiff suffered wounds to his legs during the time he was in four-point restraints, it is undisputed that these wounds were healing by the time he was evaluated by Nurse Simcox on Oct. 21, 2019. While he complained of leg pain to Nurse Garcia on Nov. 14, 2019, Plaintiff's gait and range of motion were within normal limits. Nurse Practitioner Ross similarly concluded that the wounds were healed or healing and did not require medical treatment on Dec. 3, 2019.

Plaintiff argues in his response that his legs were "bloody and swollen" and "would definitely require emergency room treatment and stitches!" (*See* Pl.'s Mem. in Resp. to Def.'s Mot. for Summ. J., Dkt. No. 125, at pg. 11.) But in his deposition, he conceded that no medical provider told him he should have received treatment that he did not receive. (Pl.'s Dep., Dkt. No. 115-1, at 188:3-6.) There also is no evidence that the injection Plaintiff received in his knee on Feb. 18, 2021, was a result of the alleged beating, rather than because of the prior knee

16

surgery and/or osteoarthritis. Plaintiff acknowledges that Dr. Sterett, who administered the injection, did not tell him that his pain was caused by the conduct alleged in this lawsuit. (*See* Pl.'s Dep., Dkt. No. 115-1, at 187:20-188:2.) Cuts and abrasions that healed without medical intervention are *de minimis* injuries.

Plaintiff also points to a photograph of him as part of "Evidence Photo Spread" from the use-of-force incident in which he states that his face is "swollen to twice its size." (*See* Dkt. No. 126 at pg. 10.) The photocopied picture may depict some swelling, although the quality of the photocopy makes it difficult to tell. Plaintiff further contends that his swollen face can be seen on the videotaped medical assessment by Nurse Simcox, and that Nurse Simcox downplayed his injuries. (*See* Pl.'s Mem. in Resp. to Def.'s Mot. for Summ. J., Dkt. No. 125, at pg. 9.)

The Court also has reviewed the recording of the physical injury assessment done by Nurse Simcox on Oct. 2, 2019. (Dkt. No. 118.) The Court will view the facts related to this medical check in the light depicted by the recording. *Scott v. Harris*, 550 U.S. 372, 380–81 (2007). The Court observes that no leg wounds are evident in this recording; Plaintiff contends that the injuries to his legs as a result of allegedly being beaten while in restraints occurred later. (*See* Pl.'s Dep., Dkt. No. 115-1, at 11:14-22.)

On the recording, Plaintiff states that he has had surgery on his right knee, is in a lot of pain, and suffered an injury to his right temple. He also complains that his right elbow is dislocated. Plaintiff expresses pain when his right knee is examined and again states that he had surgery on it. Nurse Simcox checks the elbow and finds it intact. He checks the right temple and finds no blood or swelling, although Plaintiff states that he "feel[s] swelling." Nurse Simcox states that medical staff will monitor it. As he steps out of the cell, Nurse Simcox states that no injuries were noted, Plaintiff's airway was clear, and the restraints did not interfere with his

circulation. The Court does not discern any obvious swelling to Plaintiff's face or head, although this recording represents only a small portion of the time Plaintiff was in restraints.

But regardless of whether Plaintiff experienced some swelling, the type of injuries he describes—pain, swelling, and abrasions that resolved with minimal or no medical treatment—are *de minimis*. *See*, *e.g.*, *Sublet v. Million*, 451 F. App'x. 458, 459 (5th Cir. 2011) (unpublished) (temporary pain from numbness and tenderness in hand and arm were *de minimis*); *Jones v. F.C.I. Beckley Med. Staff Emps.*, No. 5:11-cv-00530, 2014 WL 2949390, at *13 (S.D.W. Va. June 30, 2014) (forearm contusion, neck and lower back pain, and aggravation of prior "disc condition" were *de minimis* where medical records showed plaintiff had full range of motion in neck and extremities); *Homen v. United States*, No. 00 CIV. 3883, 2002 WL 844347, at *7 (S.D.N.Y. May 2, 2002) (three-centimeter abrasion and discomfort relieved by Tylenol were *de minimis* injuries). Because Plaintiff's injuries were *de minimis*, the Court finds that while he may proceed with his assault and battery claims, he is barred from recovering damages for mental or emotional injury arising from the alleged assault and battery under § 1346(b)(2).

Next, Defendant argues that Plaintiff has not satisfied the elements of a tort claim for negligent conditions of confinement under Illinois law. Under Illinois law, jailers have a duty to "exercise reasonable and ordinary care for the life and health of prisoners." *Porter v. Cook Cnty.*, 42 Ill. App. 3d 287, 290, 355 N.E.2d 561, 564 (Ill. App. Ct. 1976); *see* 18 U.S.C. § 4042(a)(2) ("The Bureau of Prisons . . . shall provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons . . . convicted of offenses against the United States . . . ."). Plaintiff contends that prison officials violated this duty by offering him food and water only once while in restraints.

Defendant argues, however, that Plaintiff has not brought forth evidence of actual

18

damages, which is an element of a negligence claim in Illinois. *See Crosby v. City of Chicago*, 11 Ill. App. 3d 625, 629, 298 N.E.2d 719, 722 (Ill. App. Ct. 1973) ("It is presently the law of Illinois that a plaintiff must prove actual damage in a negligence case before he can recover."); *see also Thompson v. Gordon*, 241 Ill. 2d 428, 438, 948 N.E.2d 39, 45 (Ill. 2011) (elements of a negligence claim include duty of care, breach of that duty, and an injury proximately caused by the breach). Nominal damages are not available for a negligence claim. *Crosby*, 11 Ill. App. 3d at 629, 298 N.E. 2d at 722.

This point is well-taken. Plaintiff has brought forth no evidence of actual damages due to the alleged denial of nutrition while in restraints, nor has he brought forth any evidence disputing that he was medically stable and showed no signs of dehydration while in restraints. Plaintiff's unsupported accusations that USP Thomson's medical staff colluded with a "rogue group of staff" and conspired to conceal his injuries is insufficient. *See Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 931–32 (7th Cir. 1995) (unsupported speculation does not meet a party's burden of defending against a summary judgment motion); *see also Daugherty v. Page*, 906 F.3d 606, 612 (7th Cir. 2018) (conspiracy claim was properly dismissed on summary judgment because plaintiff offered only speculative assertion of a cover-up). For these reasons, Plaintiff's tort claim regarding his conditions of confinement is dismissed. *See Smith v. United States*, 678 F. App'x. 403, 406 (7th Cir. 2017) (unpublished) (affirming dismissal of FTCA negligence claim that included no allegation of injury).

## **CONCLUSION**

Defendant's motion for summary judgment [113] is granted in part and denied in part. In sum, Plaintiff may proceed on his claims for physical injuries due to assault and battery. He may not recover damages for mental or emotional injury. His negligence claim related to his

conditions of confinement is dismissed in its entirety. Because Plaintiff's medical malpractice claim already has been dismissed, that portion of the summary judgment motion is denied as moot. Plaintiff's second response to the summary judgment motion [130] is stricken, as it was filed without leave and in any event does not address the relevant issues.

DATE: May 1, 2023

                                                              Iain D. Johnston
                                                              United States District Judge